UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TREMAYNE BEARD,<br><br>Defendant. | No. 1:16-cr-00046-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 39) |

Pending before the court is defendant Tremayne Beard's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 39.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On March 17, 2016, defendant was charged by way of indictment with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 7.) Pursuant to the parties' plea agreement, defendant pleaded guilty on April 3, 2017 and was thereafter sentenced to 108 months in the custody of the U.S. Bureau of Prisons and a 36 month term of supervised release to follow, along with the mandatory $100 penalty assessment. (Doc. Nos. 16, 32.)

/////

1

The presentence report prepared in defendant's case summarized the offense conduct. (Doc. No. 21 (Presentence Report, "PSR").) According to the PSR, at around 1:00 am on December 6, 2015, a gang-related shooting occurred at the Fresno fairgrounds. One of the shooters was determined to be defendant, a gang member, who was apprehended after driving away from the scene at speeds in excess of 100 miles per hour. (*Id.* at 4–5, 16.)

It was determined by the probation office that, under the U.S. Sentencing Guidelines defendant's adjusted offense level was 30, and his criminal history placed him in category VI; this would have resulted in an advisory sentencing guideline range calling for a term of imprisonment of between 168 to 210 months but for the statutory maximum of 120 months which became the guideline range. (*Id.* at 24.) The U.S. Probation Office recommended a sentence of 120 months, the statutory maximum,. (*Id.* at 23–24.) Under the plea agreement, the parties jointly agreed to recommend a sentence no less than 96 months. (Doc. No. 16 at 4–5.) On April 3, 2017, the court rejected the Probation Office's cross reference to attempted murder, U.S. Sentencing Guideline 2A2.1, in calculating defendant's guideline range, among other sentencing objections addressed by the court. (Doc. Nos. 38 at 17–19; 46 at 2–3.) The court found that defendant's applicable offense level was 21 with a history category of VI. (Doc. Nos. 38 at 18; 46 at 2–3.) The court determined that the guideline range was 77 to 96 months and varied upwards from the guidelines, sentencing defendant to 108 months in prison, with a 36-month term of supervised release to follow, and imposed the mandatory special assessment of $100. (Doc. Nos. 33 at 2–3; 38 at 17–19.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") FCI Mendota. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 8, 2021.) On October 27, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 39.) The court referred the motion to the Federal Defender's Office on November 3, 2020, which filed a supplemental memorandum on April 22, 2021. (Doc. Nos. 40, 46.) On May 6, 2021, the government filed its opposition to the motion, and defendant filed his reply thereto on May 13, 2021. (Doc. Nos. 51, 59.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

      and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

  The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit concluded that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

5

was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A.   Administrative Exhaustion

Defendant submitted an administrative request to the warden at FCI Mendota on August 19, 2020. (Doc. No. 39 at 16.) The government concedes that on August 21, 2020, the warden

denied defendant's request.  (Doc. No. 51 at 3.)

The government is of the view that the exhaustion requirement's 30-day window applies even when a warden responds within 30 days to a request for compassionate release.  (Doc. No. 51 at 3.)  There is reason to question that view.  *See supra* note 1.  Nonetheless, the government concedes that defendant has exhausted his administrative remedies.  (Doc. No. 51 at 3.)  Because a failure to exhaust administrative remedies where such is required is normally viewed as an affirmative defense, the government's concession on this point is dispositive.  Therefore, the court will address the merits of defendant's motion.

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of

>  the aging process,
>
>  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

Here, defendant Beard argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical conditions and the risks posed to him by COVID-19.  Specifically, defendant claims that he suffers from hypertension and is overweight.  (Doc. Nos. 39 at 5; 46 at 1–2.)  To qualify for compassionate release, defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Mendota and the medical condition is one "from which he . . . is

---

[4] Because defendant Beard is only 38 years old, (PSR at 2 (listing date of birth as July 29, 1982)), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

At the time of defendant's sentencing, it was noted that he previously underwent reconstructive knee surgery and has gun-shot related injuries, but "[o]therwise, he is reportedly in good health, not taking prescribed medications, and feels good." (PSR at 19.)  Moreover, his height was listed as 5'6'' and his weight as 140 pounds in 2017. (*Id.* at 2.)  Defendant's prison medical records provide an up-to-date picture of his current condition.  Those records do not list hypertension or high blood pressure as a current health problem and in April 2019, defendant denied having a history of hypertension.  (Doc. No. 50-3 at 11, 28.)  In May 2020, defendant was ordered to have weekly blood pressure checks for a duration of 30 days.  (*Id.* at 47.)  In February 2021, defendant had two high blood pressure readings but has since been prescribed medication.  (*Id.* at 53–54; Doc. No. 46 at 6.); *see High Blood Pressure: High Blood Pressure Symptoms and Causes*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/bloodpressure/about.htm (last visited June 8, 2021) (requiring a systolic reading of 130mm Hg or higher and diastolic reading of 80 mm Hg or higher).)  Furthermore, defendant has gained weight since he began serving his prison sentence; in May 2019, he weighed 170 pounds.  (Doc. No. 50-3 at 5.)  Therefore, because defendant's height is 5'6'' (Doc. No. 21 at 2), his body mass index ("BMI") is 27.4 and he is considered to be medically overweight but not obese.  *See Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/ english_bmi_calculator/bmi_calculator.html (last visited June 8, 2021).

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant's weight "can make [him] more likely to get severely ill from COVID-19" because his BMI is greater than 25 and thus is overweight.  *See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited June 9, 2021) ("The risk of severe COVID-19 illness increases sharply with elevated BMI.").  Additionally, "possibly high blood pressure (hypertension) can make [defendant] more likely to get severely ill from COVID-19."  *Id.*  There is nothing in defendant's

9

BOP medical records indicating that his weight is causing him any medical problems. (*See* Doc. No. 50-3 at 28 (sealed) ("Health Problems").) Furthermore, a review of defendant's blood pressure checks does not show frequent or consistent above-normal readings, and defendant himself states that he was recently prescribed medication for his blood pressure. (*See id.* at 53–54; Doc. No. 46 at 6.) As this court has previously held, "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020).

In addition to defendant's alleged medical conditions, the court also notes the following COVID-19 specific issues. First, the government primarily argues that regardless of his underlying medical conditions, defendant refused to receive the Moderna vaccine on April 28, 2021, and accordingly, he cannot claim a fear of risk of contracting COVID-19 while refusing the vaccine. (Doc. No. 51 at 7; *see* Doc. No. 55 (sealed).) Defendant explains that he was offered the vaccine but had reservations and questions regarding its safety, which went unanswered. (Doc. No. 59 at 2.) He further states that he did not sign a vaccine refusal form and that staff refused to set up a medical appointment in which defendant could ask his questions and make an informed decision as to whether he should get the vaccine. (*Id.*) In cases where an inmate cites the risk of contracting COVID-19 as a basis for relief but refuses to receive a vaccine, courts across the country "have nearly uniformly denied compassionate release" because such refusal "undercuts [an inmate's] fear of infection." *See United States v. Robinson*, 17 Cr. 611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (collecting cases). Even if the court were to accept defendant's explanation for his refusal of the vaccine, the court nevertheless finds other grounds support the denial of his pending compassionate release motion.

Second, defendant's BOP medical records list defendant as an "asymptomatic person in quarantine" on or about July 24, 2020. (Doc. No. 50-3 at 28 (sealed) ("Health Problems").) Additionally, defendant's records also state that he tested negative for COVID-19 on November 6, 2020, which again lists defendant as asymptomatic. (*Id.* at 62.) While those records do not explicitly state that defendant tested positive for COVID-19, generally speaking, an asymptomatic individual: (1) has recovered from an illness but no longer displays symptoms; or (2) has an

illness but is not displaying symptoms. *Asymptomatic*, U.S. NATIONAL LIBRARY OF MEDICINE: MEDLINE PLUS, https://medlineplus.gov/ency/article/002217.htm (last visited June 9, 2021). Therefore, asymptomatic people are those who have contracted an illness. Assuming the BOP uses the term in keeping with its recognized meaning, it appears from the record that defendant Beard did contract COVID-19 around July 24, 2020. Nonetheless, the court recognizes that the BOP may not use the term "asymptomatic" as it is generally understood. Even if it were the case that defendant did not actually test positive for COVID-19 and was only exposed to the virus on or about July 24, 2020, this does not impact the court's ultimate conclusion.

Based on the medical evidence before the court, defendant has not shown that he is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover" based only on the fact that he is overweight, but not obese. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). However, even if the court made that determination, defendant has also failed to demonstrate that his medical conditions "substantially diminish[] [his] ability . . . to provide self-care" inside of FCI Mendota. *See id.* Defendant asserts that because he "remains in congregate living in a prison – one where currently less than 40% [of] the prisoners are vaccinated – he remains at a higher risk of exposure." (Doc. No. 59 at 8.) While it is true that FCI Mendota suffered from a moderate COVID-19 outbreak, with 30 inmates and 33 staff who tested positive but recovered, no inmates have died at the hands of the virus. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited October 30, 2021).[5] At the moment, however, there are currently no inmates and only one staff member at that prison who are positive with active cases of COVID-19.[6] *Id.* Because it appears that current active cases among prisoners at FCI Mendota have been reduced to zero, adding COVID-19 to the equation thus does not tip the scales in favor of defendant's compassionate release at all. Furthermore, nothing currently in the record before this court shows that defendant is actually struggling to take care of

---

[5] FCI Mendota has a population of 1,034 inmates. *FCI Mendota*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/men/ (last visited October 30, 2021).

[6] The undersigned does not necessarily accept these reported numbers at face value in light of the constant changes in CDC guidelines and the manner in which recovered cases are determined.

11

himself.  The court observes that as of May 2019, a BOP medical staff member noted that defendant appeared "[w]ell, [a]lert and [o]riented."  (Doc. No. 50-3 at 5 (sealed).)  And, for the reasons discussed above, defendant's records do not show any major medical problems and that he appears to be receiving proper care from BOP's medical staff.

Accordingly, there is no basis upon which the court could conclude that defendant is "substantially diminishe[d]" in his ability to "provide self-care" at FCI Mendota.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Thus, defendant Beard has failed to carry his burden.  *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").  Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

### CONCLUSION

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison.  Accordingly, defendant's motion for compassionate release (Doc. No. 39) is denied.

IT IS SO ORDERED.

Dated:   **October 30, 2021**                                         _____
                                                                                        UNITED STATES DISTRICT JUDGE